Filed 11/7/25  Taylor v. Thor Motor Coach CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL TAYLOR et al., | D083730 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2023-00024862-CU-BC-CTL) |
| THOR MOTOR COACH, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Reversed with directions.

Barry Law Firm and David N. Barry; Shay Dinata-Hanson for Plaintiffs and Appellants.

Horvitz & Levy, Lisa Perrochet and Shane H. McKenzie; Bravo Law Group, Dolores E. Gonzales and James R. Robertson for Defendant and Respondent.

## I.  INTRODUCTION

Michael and Robin Taylor (Plaintiffs) bought a motorhome manufactured by Thor Motor Coach, Inc. (Thor) from an independent dealer in California.  Plaintiffs sued Thor for alleged breaches of warranty under

California's lemon law statute, the Song-Beverly Consumer Warranty Act (Civ. Code,[1] § 1790 et seq.; the Song-Beverly Act). Thor moved to stay the action on forum non conveniens grounds based on a forum selection clause in its warranty documents designating Indiana the exclusive forum for warranty litigation. The warranty documents also include a choice of law provision designating Indiana law. Recognizing that certain of its warranty provisions or Indiana law may provide fewer consumer protections than are afforded by unwaivable provisions of the Song-Beverly Act, Thor offered to stipulate that the act would apply in an action brought by Plaintiffs in Indiana. Based largely on this offer, the trial court granted the motion. Plaintiffs appeal.

Since the trial court's ruling, three divisions of the Second District Court of Appeal have examined the issue before us: Whether a motorhome manufacturer's offer to stipulate to apply the Song-Beverly Act in warranty litigation in an alternative forum provides sufficient assurance that the plaintiffs' unwaivable Song-Beverly Act protections will not be diminished. (See *Lathrop v. Thor Motor Coach, Inc.* (2024) 105 Cal.App.5th 808, review granted Jan. 15, 2025, S287893 (*Lathrop*) [Second District, Division Seven];[2] *Hardy v. Forest River, Inc.* (2025) 108 Cal.App.5th 450, review granted Apr. 30, 2025, S289309 (*Hardy*) [Second District, Division Two]; *Kim v. Airstream, Inc.* 113 Cal.App.5th 201 (*Kim*) [Second District, Division One].) All three courts found the stipulation offer insufficient, though the courts' reasoning falls into two different camps. *Lathrop* and *Hardy* concluded that

---

[1] Undesignated statutory references are to the Civil Code.

[2] Under rule 8.1115(e)(1) of the California Rules of Court, we may cite a case in which review has been granted for its "potentially persuasive value only" and not for any "binding or precedential effect."

2

enforcing the stipulation offer condones the manufacturer's illegal scheme of offering warranty terms it knows violate unwaivable statutory rights and then offering to stipulate around those violations in pending litigation to maintain the violative terms in place for less sophisticated consumers who do not know to challenge them in a California court.  (See *Lathrop*, at p. 821; *Hardy*, at p. 460.)  *Kim* took a different approach.  *Kim* disagreed with this unconscionability rationale (*Kim*, at p. 211), reasoning the manufacturer's inclusion of provisions in its nationwide warranty that violate the Song-Beverly Act provide "efficiency and predictability benefits [by] creating a single set of . . . warranty terms applicable to all vehicles [the manufacturer] manufactures, regardless of the state in which a dealer sells them to a consumer" (*Kim*, at p. 215).  But the *Kim* court nonetheless found the stipulation offer insufficient to satisfy the manufacturer's burden to show the plaintiff's unwaivable statutory rights would not be diminished in the alternative forum "because of the unpredictability in how the parties will interpret and react to" the stipulation during the ensuing litigation.  (*Id.* at p. 221.)  Because of the recent changes in the legal landscape regarding the sufficiency of a stipulation to salvage an otherwise unenforceable forum selection clause, the *Kim* court remanded the case to give the manufacturer another opportunity to make a showing on its burden under traditional conflict of laws principles.  (*Id.* at p. 223.)

We agree with the courts' conclusions in *Lathrop*, *Hardy*, and *Kim* that an offer to stipulate to apply the Song-Beverly Act in litigation in an alternative forum is insufficient, standing alone, to meet a moving party's burden to show that litigating in an alternative forum will not diminish a plaintiff's unwaivable statutory rights.  At a minimum, we agree with the *Kim* court's "unpredictability" rationale.  (*Kim*, *supra*, 113 Cal.App.5th at

3

p. 221.) On the undeveloped appellate record before us, however, we are unable to reach a conclusion as to the *Lathrop* and *Hardy* courts' unconscionability rationale. The parties introduced no evidence in the trial court bearing on unconscionability and the trial court did not consider the issue apart from its reliance entirely on Thor's proposed stipulation. Thus, the record and findings on this issue are insufficient for meaningful appellate review.

Accordingly, we reverse the trial court's order granting Thor's motion to stay. But like the *Kim* court, we conclude it is in the interests of justice to provide Thor another opportunity to meet its burden as the moving party and for the parties to submit evidence, if any, bearing on unconscionability or other applicable legal principles.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Purchase

In September 2021, Plaintiffs bought a new Thor motorhome for about $145,000 from La Mesa RV Center, Inc. (La Mesa) in San Diego. As part of the sale, Plaintiffs signed a sales agreement and Mr. Taylor signed Thor's two-page "product warranty registration form" (the registration form). The registration form includes several provisions relevant to Thor's warranty and to disputes between the parties.

The first relevant provision is a purchaser's acknowledgement of receipt of Thor's "Motor Coach Limited Warranty" (the limited warranty). The acknowledgment reads:

> Before I purchased my motorhome, I received, read and agreed to the terms and conditions of the [limited warranty] . . . . If for any reason I did not receive, read and agree to the terms and conditions of the

4

[limited warranty] . . . before closing the purchase of the motorhome, I understand and agree that by requesting and accepting the performance of Warranty repairs under the terms of the [limited warranty], I am accepting all terms and conditions of the [limited warranty], including by way of example, warranty limitations and disclaimers, the forum selection clause and the clause reducing the time period when suit must be filed for breach.

The second relevant provision in the registration form is a forum selection clause, which states:

**I UNDERSTAND THAT EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES RELATING TO ALLEGED BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTIES . . . RESTS IN THE COURTS WITHIN THE STATE OF MANUFACTURE, WHICH IS INDIANA.**

The registration form also includes a prospective jury waiver, which provides:

**I AGREE THAT ANY AND ALL ACTIONS OF ANY KIND RELATED TO OUR MOTORHOME SHALL BE DECIDED BY A JUDGE RATHER THAN BY A JURY.**

The registration form also includes acknowledgments stating that the purchaser "understand[s] and agree[s] to" the limited warranty's "forum selection clause" and "choice of law clause."

Thor's limited warranty reiterates that "request[ing] and accept[ing] the performance of warranty repairs under" the limited warranty constitutes the purchaser's acceptance of "all terms of [the limited warranty], including . . . the forum selection clause."

5

The limited warranty also includes a "Legal Remedies" clause that contains Indiana forum selection and choice of law provisions. This clause states:

> **EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES RELATING TO ALLEGED BREACH OF EXPRESS WARRANTY AND BREACH OF IMPLIED WARRANTIES . . . MUST BE FILED IN A STATE OR FEDERAL COURT WITHIN THE STATE OF MANUFACTURE, WHICH IS INDIANA. ALSO, THIS LIMITED WARRANTY SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF INDIANA. ANY AND ALL CLAIMS, CONTROVERSIES AND CAUSES OF ACTION ARISING OUT OF OR RELATING TO THIS LIMITED WARRANTY, WHETHER SOUNDING IN CONTRACT, TORT, OR STATUTE, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA, INCLUDING ITS STATUTE OF LIMITATIONS, WITHOUT GIVING EFFECT TO ANY CONFLICT-OF-LAW RULE THAT WOULD RESULT IN THE APPLICATION OF THE LAWS OF A DIFFERENT JURISDICTION.**

## B. The Lawsuit

In June 2023, less than two years after purchasing their motorhome, Plaintiffs sued Thor for breach of express and implied warranties under the Song-Beverly Act. Plaintiffs alleged they presented the motorhome to Thor for repairs but Thor failed to restore the motorhome to its warranted condition.

In July 2023, Thor filed an answer generally denying the complaint's allegations and asserting a variety of affirmative defenses, including that "the documents governing the transaction at issue" specify that "venue . . . is proper only in the Courts in Indiana."

6

## C. The Motion to Stay

### 1. Thor's Moving Papers

In August 2023, Thor moved to stay Plaintiffs' lawsuit on forum non conveniens grounds. The motion invoked the registration form and limited warranty provisions quoted above. Thor supported its motion with declarations from La Mesa's finance manager and Thor's consumer affairs manager.

The La Mesa witness authenticated the relevant purchase documents; stated that Plaintiffs signed the sales agreement and the registration form; and described La Mesa's standard practice of reviewing all warranty documents with purchasers before any sale is completed and documenting such review by having the purchaser and a La Mesa representative sign the registration form.

The Thor witness stated that Thor "has included versions of a mandatory forum selection clause in its warranty agreements . . . since 2013," all of which "have identified Indiana as the exclusive jurisdiction" for resolving warranty disputes.

Thor argued in its motion that "[b]ecause the forum selection clause in [the limited warranty] and the [registration form] is mandatory and because an Indiana court can provide the relief [Plaintiffs] are seeking, the burden falls on plaintiffs to demonstrate that enforcement of the clause is unreasonable." "Recogniz[ing] the California legislature made . . . a buyer's rights under Song-Beverly essentially unwaivable," Thor offered "to allay any concerns in that regard" by "stipulat[ing] by [its] motion" that (1) the Song-Beverly Act "will apply to Plaintiffs' claims as pled in their Complaint," and (2) Thor "will not oppose a request that the Indiana court utilize the [Song-Beverly Act]." Thor acknowledged that "Indiana's 'lemon law'

specifically excludes [motorhomes] from vehicles to which those statutes apply."

## 2. Plaintiffs' Opposition

Plaintiffs opposed Thor's motion. They argued, as an initial matter, that because Thor was seeking to enforce a contract provision that conflicts with unwaivable rights under the Song-Beverly Act, Thor carried the initial burden of showing the forum selection clause was enforceable. Plaintiffs then addressed alleged shortcomings in Thor's showing.

First, Plaintiffs asserted Thor failed to show that Plaintiffs voluntarily agreed to the forum selection clause. Plaintiffs disputed that Thor or La Mesa provided them with the limited warranty, noting the La Mesa declarant explained only generally the company's standard practices. Plaintiffs further argued that although the signed registration form "create[d] a rebuttable presumption" that they received the limited warranty, it was "not conclusive proof" of that fact.

Second, citing conflicts between warranty terms and Song-Beverly Act rights, Plaintiffs argued the forum selection clause and choice of law clauses, taken together, were an " 'entirely plain' " violation of California public policy because they purported to waive unwaivable rights under the Song-Beverly Act.

Next, Plaintiffs argued the forum selection clause was unconscionable as a matter of general contract law because it was contained in an adhesion contract.

Finally, citing *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*), Plaintiffs argued that Thor's offer to stipulate to apply California law in Indiana did not save the otherwise-unenforceable forum selection clause because Thor's warranty

8

documents were " 'permeated' " with "multiple illegal [warranty] terms . . . such that striking a single provision could not remove the unconscionable taint from the agreement."  Plaintiffs reasoned, moreover, that "endorsing the stipulation" is itself "contrary to California public policy" because doing so would deter Thor from revising its warranty documents to respect California law.  And absent such revision, Plaintiffs reasoned, less sophisticated consumers "may initiate a lawsuit in Indiana as directed by the warranty, only to find Indiana's lemon law excludes motorhomes," or may "be discouraged to seek relief upon realizing they will have to file suit in a distant forum."  Plaintiffs expressly declined Thor's offer to stipulate.

### 3.  Thor's Reply

In reply, Thor acknowledged it bore "the burden of establishing that the operative forum selection clause does not infringe upon" Plaintiffs' California statutory rights.  But Thor maintained it met that burden by offering to stipulate to apply the Song-Beverly Act in Indiana.

### 4.  The Trial Court's Ruling

In January 2024, the trial court heard and granted Thor's motion. Preliminarily, the court acknowledged in its ruling that although the party opposing enforcement of a forum selection clause ordinarily bears the burden of proving its enforcement would be unfair or unreasonable, the burden shifts to the party seeking enforcement if unwaivable California statutory rights are threatened.  The court then stated the reasons it "disagree[d]" with Plaintiffs' "conten[tion] that the enforcement of the mandatory forum selection clause is unreasonable."

9

First, the court found Plaintiffs voluntarily agreed to the forum selection clause based on Thor's evidentiary showing and Plaintiffs' request for repairs under the limited warranty.[3]

Second, the court rejected Plaintiffs' contention "that their substantive rights will be impaired with respect to the Song-Beverly [Act]," reasoning "Thor has stated that [it] will stipulate to the application of Song-Beverly to their warranty claims and the right to a jury trial in Indiana." The trial court noted that two federal district courts in California had found that Thor's similar stipulation offers sufficiently protected California consumers' statutory rights. (See *Derosa v. Thor Motor Coach, Inc.* (C.D. Cal., Sept. 30, 2020, No. 2:20-cv-04895-SVW-PLA) 2020 U.S. Dist. LEXIS 216494 (*Derosa*); *Baxter v. Thor Motor Coach, Inc.* (E.D. Cal., Apr. 20, 2020, No. 2:19-cv-01532 JAM-CKD) 2020 U.S. Dist. LEXIS 69139 (*Baxter*).)

Third, the court rejected Plaintiffs' general unconscionability argument. The court reasoned that even if the forum selection clause was *procedurally* unconscionable because it was contained in an adhesion contract, Plaintiffs' "*substantive* unconscionability argument fails due to the existence of Thor's stipulation." (Italics added.)

Finally, the court rejected any claim that litigating in Indiana would be less convenient or more expensive for Plaintiffs.

Accordingly, the trial court stayed the case and set a case management conference for approximately one year later. Taylor timely appealed.

---

3   We conclude substantial evidence supports the trial court's factual finding on this point. Accordingly, we do not discuss it further.

10

## III. DISCUSSION

### A. Relevant Legal Principles

" 'California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable.' " (*G Companies Management, LLC v. LREP Arizona, LLC* (2023) 88 Cal.App.5th 342, 350 (*G Companies*); accord, *EpicentRx, Inc. v. Superior Court* (2025) 18 Cal.5th 58, 66–67 (*EpicentRx*).)[4] Accordingly, "[t]he party opposing enforcement of a forum selection clause ordinarily 'bears the "substantial" burden of proving why it should not be enforced.' " (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*); see *G Companies*, at p. 350.)

"One exception to th[e] general rule of enforceability" of forum selection clauses "is grounded in public policy. California courts have held that 'a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state.' " (*EpicentRx*, *supra*,

---

[4]     While this appeal was pending, the Supreme Court decided *EpicentRx*, which held that "[a] forum selection clause is not unenforceable simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California enjoy." (*EpicentRx*, *supra*, 18 Cal.5th at p. 67.) We requested and received supplemental briefing from the parties on the impact, if any, of *EpicentRx* on the issues in this case. Because *EpicentRx* did not involve an express predispute jury waiver or unwaivable substantive statutory rights, we conclude *EpicentRx* is not dispositive of the issues before us. (See *id.* at p. 82 [distinguishing cases that "primarily concerned the plaintiffs' underlying legal rights to obtain relief under [substantive] California statutory law"]; *id.* at p. 84, fn. 7 ["We need not and do not consider the merits of [cases] involving potentially unwaivable substantive rights"]; *id.* at p. 84 ["We need not and do not consider whether California's strong public policy in favor of the right to a jury trial might be relevant, in combination with other factors, to the enforceability of a forum selection clause in other contexts or under other theories."].)

18 Cal.5th at p. 74.)  The party opposing enforcement of a forum selection clause bears the initial burden of " ' " 'show[ing] that its enforcement would be in violation of the settled public policy of this state.' " ' " (*Id.* at p. 76.) Once the opposing party makes this threshold showing in a case in which the public policy is "based on unwaivable rights created by California statutes," the burden then shifts to "the party seeking to enforce the forum selection clause . . . to show litigating the claims in the contractually designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' " (*Verdugo, supra,* 237 Cal.App.4th at p. 147; see *G Companies, supra,* 88 Cal.App.5th at p. 350.)

This public-policy-based burden-shifting often arises in cases in which an agreement contains both a forum selection clause and a choice of law provision.  (See, e.g., *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 4 (*America Online*) [affirming the trial court's denial of a motion to stay because "[e]nforcement of the contractual forum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the [Consumers Legal Remedies Act]," which "is prohibited under California law"]; *Verdugo, supra,* 237 Cal.App.4th at p. 144; *Hall v. Superior Court* (1983) 150 Cal.App.3d 411, 416.)  In such cases, courts typically consider the interplay between forum selection and choice of law clauses to ensure that enforcing the forum selection clause will not cause the case to be litigated in a forum that will then enforce a choice of law provision that designates the law of an alternative forum that diminishes unwaivable California statutory rights. (See *America Online,* at pp. 13–14; *Hall,* at p. 416 [finding the "determination as to the validity of the choice of law provision is prerequisite to a determination of whether the forum selection clause should be enforced"

because the "considerations are inextricably bound up" — litigating in Nevada under that state's law would afford the plaintiffs less protection than that provided by California's unwaivable rights under its Corporate Securities Law]; *Verdugo, supra,* 237 Cal.App.4th at p. 158 [rejecting the defendant's claim that "enforcing the forum selection clause will not diminish [the plaintiff]'s [unwaivable California] statutory rights" because it was "conclusory speculation" that a Texas court would not enforce the contractual choice of Texas law as the governing law].)

It is undisputed here that the Song-Beverly Act provides Plaintiffs with certain unwaivable rights as a matter of public policy. (See, e.g., *Hardy, supra,* 108 Cal.App.5th at p. 456, review granted; see § 1790.1 ["Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void."]; *Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1034 (*Rheinhart*) [the Song-Beverly Act "is 'strongly pro-consumer' " and its "antiwaiver provision is extremely broad"].) Thus, Thor bore the burden " 'to prove that enforcement of the forum selection clause would not result in a significant diminution of' " Plaintiffs' rights under the Song-Beverly Act. (*Verdugo, supra,* 237 Cal.App.4th at p. 150.) "To meet this burden, [Thor] had to show that [an] Indiana court would provide ' "the same or greater rights than California" or would "apply California law on the claims at issue." ' " (*Hardy,* at p. 457, quoting *Lathrop, supra,* 105 Cal.App.5th at p. 818, review granted.)

"We review an order enforcing a forum selection clause for abuse of discretion. [Citations.] However, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. The question of

13

whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law, which is reviewed de novo." (*Hardy*, *supra*, 108 Cal.App.5th at p. 456, review granted; see *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

## B. Motorhome Warranty Forum Selection Cases

### 1. *Lathrop*

The plaintiffs in *Lathrop*, *supra*, 105 Cal.App.5th 808, review granted, sued Thor in a California court for warranty violations under the Song-Beverly Act. Thor moved to stay the case on forum non conveniens grounds based on registration form and limited warranty provisions that are substantially similar to those at issue here. (*Lathrop*, at pp. 813–815.) "To address the[] problems" posed by the interplay between the warranty documents' choice of law and forum selection clauses (*id.* at p. 812), Thor offered to stipulate that " '(1) the substantive provisions of the [Song-Beverly Act] . . . , along with all other unwaivable California substantive rights, will apply to [the plaintiffs'] currently enumerated claims when pursued in . . . Indiana; and (2) [Thor] will not oppose a request that the Indiana court utilize the [Song-Beverly Act]" (*id.* at p. 814, citations omitted). The trial court granted Thor's motion, concluding that "enforcing the forum selection clause was not 'unreasonable given the circumstance of th[e] case.' " (*Id.* at p. 815.) The Second District, Division Seven, reversed.

The *Lathrop* court first found that because unwaivable statutory rights were at issue, the trial court erred by failing to shift the burden to Thor. (*Lathrop*, *supra*, 105 Cal.App.5th at pp. 816–818, review granted.)

Next, the *Lathrop* court concluded Thor "failed to show litigating in Indiana would not substantially diminish the [plaintiffs'] unwaivable

statutory rights." (*Lathrop, supra,* 105 Cal.App.5th at p. 818, review granted, capitalization & italics omitted.)  The court reasoned that "[b]ecause the [l]imited [w]arranty contained not only an Indiana forum selection clause but also an Indiana choice-of-law clause, an Indiana court could enforce several terms of the [l]imited [w]arranty that would be unenforceable under the Song-Beverly Act."[5]  (*Id.* at p. 818.)  "Given the consumer-protection deficit between the terms of the [l]imited [w]arranty and the Song-Beverly Act," the *Lathrop* court concluded "Indiana did not provide the [plaintiffs] the same or greater rights than California."  (*Id.* at p. 819.)

The *Lathrop* court also found that "[l]itigating in Indiana under Indiana law would deprive the [plaintiffs] not only of their rights under the Song-Beverly Act, but also their right to a jury trial . . . [b]ecause a predispute jury trial waiver, such as the one in the [w]arranty [r]egistration

---

[5]     The *Lathrop* court observed several ways in which Thor's warranty "offered the [plaintiffs] less protection than the Song-Beverly Act."  (*Lathrop, supra,* 105 Cal.App.5th at p. 818, review granted.)  "For example, under the [l]imited [w]arranty Thor could require the buyer to deliver the motorhome to a service facility in Indiana or 'another authorized service center or dealership for certain repairs'; the Song-Beverly Act requires a manufacturer to provide service facilities and repair facilities 'reasonably close to all areas where its consumer goods are sold' (§ 1793.2, subd. (a)).  In addition, the [l]imited [w]arranty disclaimed consequential and incidental damages; the Song-Beverly Act allows a buyer to recover those damages (§ 1794, subds. (a), (b)(2); Cal. U. Com. Code, §§ 2714, 2715).  And the [l]imited [w]arranty provided that, if a defect is incurable, the buyer's 'sole and exclusive remedy' is 'diminished value damages'; the Song-Beverly Act requires a seller to replace the vehicle or 'make restitution in an amount equal to the actual price paid' (§ 1793.2, subd. (d)(2)(B))."  (*Lathrop,* at pp. 818–819.)

15

[f]orm, is unenforceable under California law." (*Lathrop*, *supra*, 105 Cal.App.5th at p. 819, review granted].)[6]

Next, the *Lathrop* court explained why it deemed Thor's stipulation offer insufficient to cure the problem. (*Lathrop*, *supra*, 105 Cal.App.5th at p. 820, review granted.) Viewing Thor's proposed stipulation as "essentially a request [that] the trial court sever the unenforceable portions of the [warranty documents] and enforce the remainder," the court looked to the severance framework the Supreme Court established in *Armendariz*, *supra*, 24 Cal.4th 83 and *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478 (*Ramirez*). (See *Lathrop*, at p. 820.) Under the first step of this approach, the "court should ask whether 'the central purpose of the contract is tainted with illegality.'" (*Ramirez*, at p. 516.) "If the central purpose of the contract *is* tainted with illegality, then the contract as a whole cannot be enforced." (*Armendariz*, at p. 124, italics added.) If the central purpose is *not* so tainted, the court moves to the second step of considering "whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." (*Ramirez*, at p. 516.) "If the unconscionability . . . requires augmentation . . . , then the court should refuse to enforce the contract." (*Ibid.*; see *Armendariz*, at p. 125 [noting courts lack the authority to augment or reform contracts].) But if the offending provision can be severed, that is ordinarily "the preferred course." (*Ramirez*, at p. 516.) Lastly, however, "[e]ven if a contract *can* be cured, the court should also ask whether the

6    Because *Lathrop* involved the interplay between an express predispute jury waiver and unwaivable statutory rights, it does not appear to fall within the narrow holding of *EpicentRx* that a forum selection clause is enforceable if, considered in isolation, it results in the loss of a jury trial right in an alternative forum. (See *EpicentRx*, *supra*, 18 Cal.5th at pp. 82, 84 & 84, fn. 7.)

16

unconsciability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." (*Id*. at p. 516; see *Armendariz*, at p. 124 ["The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance."].)

Applying this framework, the *Lathrop* court assumed that Thor's warranty documents *could* be cured by severance but concluded they *should not* be because doing so "would not further the interests of justice." (*Lathrop*, *supra*, 105 Cal.App.5th at p. 820, review granted.) First, the court reasoned that severing the unconscionable provisions would be unfair to less sophisticated consumers. That is, by offering to stipulate around unenforceable warranty provisions when a "savvy" consumer asserts its unwaivable rights, Thor preserves the unenforceable warranty provisions as to less sophisticated California consumers who comply with the forum selection clause either by filing suit in Indiana (where the state's lemon law does not apply to motorhomes) or by being "deterred from pursuing their claims at all." (*Id*. at p. 821.)

Relatedly, the *Lathrop* court concluded that enforcing Thor's proposed stipulation would incentivize Thor "to continue to include admittedly unenforceable provisions in its warranties" and "deter Thor from revising its warranty to comply with California law." (*Lathrop*, *supra*, 105 Cal.App.5th at p. 821, review granted; see *Ramirez*, *supra*, 16 Cal.5th at p. 517 ["severing multiple unconscionable provisions from an agreement and enforcing the remainder could 'create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place' "]; *Armendariz, supra,*24 Cal.4th at p. 124, fn. 13 ["An

17

employer will not be deterred from routinely inserting [an unlawful] clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter.  In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice."].)  The *Lathrop* court cited federal district court decisions that relied on this deterrence rationale in rejecting Thor's proposed stipulation.  (See *Lathrop*, at p. 822, citing *Gorga v. Thor Motor Coach, Inc.* (N.D.Cal., Feb. 6, 2024, No. 23-cv-03603-RFL) 2024 U.S. Dist. LEXIS 45607 at p. *4 (*Gorga*) ["Accepting [Thor's] stipulations and enforcing the forum selection clause would encourage and condone [Thor's] decision to continue using warranty agreements that it is aware contravene California public policy."] and *Waryck v. Thor Motor Coach, Inc.* (S.D.Cal., Jan. 13, 2023, No. 22-cv-1096-L MDD) 2023 U.S. Dist. LEXIS 98645 at pp. *12–*13 (*Waryck*) ["accepting [Thor's] stipulations or severing the clauses would . . . contravene California public policy," and the court "should not condone" such a "scheme"].)

The *Lathrop* court was unpersuaded by Thor's claim that, to the extent its nationwide warranty provisions may conflict with the Song-Beverly Act, the conflicts are remedied by the warranty's inclusion of disclaimer language required by the federal Magnuson-Moss Warranty Act, which states:  " 'This limited warranty gives you specific legal rights.  You may also have other rights, which vary from state to state and province to province.' " (*Lathrop, supra,* 105 Cal.App.5th at p. 823, review granted.)  The *Lathrop* court found that this advisement — that a consumer " 'may also have other rights' " —

does not sufficiently advise consumers that Thor's warranty purports to restrict specific California statutory rights and remedies. (*Ibid*.)

The *Lathrop* court also rejected Thor's reliance on the court's suggestion in *Verdugo*, *supra*, 237 Cal.App.4th 141 that a party can stipulate around an otherwise invalid choice of law dilemma to maintain the benefit of a forum selection clause. (*Lathrop*, *supra*, 105 Cal.App.5th at p. 823, review granted; see *Verdugo*, at p. 158 [positing that the employer-defendant "could have eliminated any uncertainty on which law a Texas court would apply by stipulating to have a Texas court apply California law in deciding [the employee]'s claims, but [the employer] did not do so"].) The *Lathrop* court dismissed the *Verdugo* court's suggestion as dicta. (*Lathrop*, at p. 824.)

In addition to the public policy problems Thor's proposed stipulation presented, the *Lathrop* court also found its wording disqualifying. For example, the stipulation's caveat that " 'the *substantive* provisions' of the Song-Beverly Act' " would apply to the plaintiffs' " '*currently enumerated claims*' . . . created . . . opportunities for unwaivable rights mischief in Indiana" regarding which rights are substantive or procedural and about whether plaintiffs could amend their pleading. (*Lathrop*, *supra*, 105 Cal.App.5th at p. 824, review granted, italics added.) The court also noted that the stipulation's offer to "not oppose" (rather than to join) the plaintiffs' request that an Indiana court apply the Song-Beverly Act did not guarantee that an Indiana court would, in fact, apply the California statute. (*Lathrop*, at p. 826.)

### 2. *Hardy*

More recently, in *Hardy*, *supra*, 108 Cal.App.5th 450, review granted, our colleagues in the Second District, Division Two, followed *Lathrop* in reversing a trial court's order granting a motorhome manufacturer's motion

19

to stay based on a forum selection clause in its warranty documents. (*Hardy*, at p. 458.)

Preliminarily, the *Hardy* court concluded the trial court erred in finding that the forum selection clause was not unconscionable. (*Hardy*, *supra*, 108 Cal.App.5th at p. 457, fn. 4, review granted.) The appellate court found the clause was "at least somewhat procedurally unconscionable" because it was "a contract of adhesion," and was — "[w]hen combined with the choice of law provision" — substantively unconscionable because it "purported to foreclose unwaivable rights." (*Ibid.*; see *Ramirez, supra*, 16 Cal.5th at p. 493 ["Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' "].)

The *Hardy* court also relied on unconscionability principles to conclude that the motorhome manufacturer's offer to stipulate to apply the Song-Beverly Act in an Indiana court did not cure the problem created by the warranty's conflicts with California public policy. (*Hardy, supra*, 108 Cal.App.5th at p. 458, review granted.) Specifically, the court concluded an after-the-fact stipulation offer cannot prevent unconscionability because "our Supreme Court has instructed that the time to look at a contract for unconscionability is as of the date it is written." (*Ibid.*, citing *Ramirez, supra*, 16 Cal.5th at p. 503 [finding that an employer's "reliance on postformation circumstances" to cure the unconscionability in its arbitration agreement "violates th[e] principle" that "whether a contract 'works unconscionable hardship is determined with reference to the time when the contract was

made' and cannot be resolved in hindsight"].) So framed, the *Hardy* court viewed the manufacturer's proposed stipulation as " ' "at most, . . . an offer to modify the contract . . . that was never accepted" ' " and which the court lacked authority to unilaterally impose. (*Hardy*, at p. 459, quoting *Armendariz, supra*, 24 Cal.4th at p. 125; see *Armendariz*, at p. 125 [" 'No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.' "]; *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1584 [" '[C]ourts should not consider after-the-fact offers' " to stipulate around unconscionable contract provisions because " '[t]he [drafter] is saddled with the consequences of the provision *as drafted*' "].)

As with the *Lathrop* court, the *Hardy* court also concluded that even if the invalid portions of the warranty documents *could* be severed to salvage the forum selection clause, the court *should not* sever them because doing so would " 'condone an illegal scheme' " and undermine the interests of justice. (*Hardy, supra*, 108 Cal.App.5th at p. 459, review granted, quoting *Ramirez, supra*, 16 Cal.5th at p. 516.)

The *Hardy* court found the manufacturer's proposed stipulation also ran afoul of section 3513, which states: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (See *Hardy, supra*, 108 Cal.App.5th at p. 460, review granted; *Ramirez, supra*, 16 Cal.5th at p. 503 [citing § 3513 to conclude that where statutory "protections 'are for the benefit of the entire public, not just [one] plaintiff,' " those "protections . . . cannot be abrogated by private agreement"].)

The *Hardy* court noted the split among federal district courts addressing the "identical issue" before it. (*Hardy, supra*, 108 Cal.App.5th at

21

p. 460, review granted.)  "After careful review of all of those decisions," the *Hardy* court concluded that the courts that enforced the clauses have generally (1) relied on the more lenient federal standard for enforcing forum selection clauses, and (2) failed to conduct the required *Armendariz/Ramirez* unconscionability analysis based on the warranty documents as they existed at the time of contracting.  (*Hardy*, at pp. 460–461.)[7]  By contrast, the courts that "declined to enforce the forum selection clause or accept the proposed stipulation . . . all cited to the very public policy concerns" discussed by the *Hardy* court.  (*Ibid*.)[8]

Finally, the *Hardy* court found unavailing the manufacturer's reliance on the *Verdugo* court's discussion of "the possibility a defendant might be able to stipulate to apply California law."  (*Hardy*, *supra*, 108 Cal.App.5th at p. 461, review granted.)  *Hardy* dismissed the *Verdugo* court's suggestion as dicta that failed to account for the Supreme Court's dictate in *Armendariz*

---

[7]     The *Hardy* court cited the following cases in this category:  *Torres v. Jayco, Inc.* (C.D. Cal., Mar. 6, 2024, No. EDCV 24-0065-KK-SHKx) 2024 U.S. Dist. LEXIS 67682; *Frisby v. Thor Motor Coach, Inc.* (C.D. Cal., Jan. 24, 2023, No. CV-22-2047-MWF (SHKx)) 2023 U.S. Dist. LEXIS 18786; *Jung v. Thor Motor Coach, Inc.* (C.D. Cal., Jan. 20, 2023, No. EDCV 22-1763 JGB (KKx)) 2023 U.S. Dist. LEXIS 19853; *Zastawnik v. Thor Motor Coach, Inc.* (C.D. Cal., Jun. 16, 2023, No. CV-22-08663-PSG-AS) 2023 U.S. Dist. LEXIS 142594; *Pinkevich v. Thor Motor Coach, Inc.* (C.D. Cal., Nov. 16, 2022, No. 2:22-cv-05985-ODW (Ex)) 2022 U.S. Dist. LEXIS 240716; *Derosa*, *supra*, 2020 U.S. Dist LEXIS 216494; *Carreon v. Nexus RVS, LLC* (E.D. Cal., July 20, 2020, No. 2:20-cv-00722-JAM-KJN) 2020 U.S. Dist. LEXIS 127541; and *Baxter*, *supra*, 2020 U.S. Dist. LEXIS 69139.

[8]     The *Hardy* court cited the following cases in this category:  *Waryck*, *supra*, 2023 U.S. Dist. LEXIS 98645; *Gorga*, *supra*, 2024 U.S. Dist. LEXIS 45607; and *Scott v. Airstream, Inc.* (S.D. Cal. 2024) 715 F.Supp.3d 1295, 1301.

and *Ramirez* that the unconscionability analysis be based on the contract as drafted without considering subsequent events.  (*Hardy*, at pp. 461–463.)

### 3. *Kim*

Most recently, in *Kim, supra*, 113 Cal.App.5th 201, our colleagues in the Second District, Division One, affirmed a trial court's severance of a motorhome warranty's choice of law provision, but reversed the trial court's determination that the manufacturer's proposed stipulation to apply the Song-Beverly Act in the alternative jurisdiction met the manufacturer's burden to show the plaintiff's unwaivable statutory rights would not be diminished.[9]  The *Kim* court remanded to give the manufacturer the opportunity to meet its burden through means other than a stipulation. (*Kim*, at p. 223.)

The trial court in *Kim* found it necessary to sever the warranty's choice of law provision because, considered with the forum selection clause, it " ' "would result in the application of the laws of a different jurisdiction," " " which was " 'a problem because the [motorhome] was purchased in California, and the [Song-Beverly Act] cannot be waived.' " (*Kim, supra*, 113 Cal.App.5th at p. 209.)  The trial court therefore struck the choice of law provision under the Song-Beverly Act's antiwaiver provision (§ 1790.1) and concluded that the manufacturer's stipulation to apply the Song-Beverly Act in the alternative forum " 'cure[d] the unconscionability' " (*Kim*, at p. 209). The trial court granted the manufacturer's motion to stay, conditioned on the manufacturer and the alternative forum agreeing to apply the Song-Beverly Act.  (*Ibid*.)  The *Kim* court affirmed in part and reversed in part.

---

9    *Kim* was decided while this appeal was pending.  The parties discussed the case in their supplemental briefing on *EpicentRx*.

23

The *Kim* court assumed without deciding that the choice of law provision was unconscionable and then applied each step of the *Armendariz/Ramirez* severance framework.  (*Kim*, *supra*, 113 Cal.App.5th at pp. 211–217; see *id*. at p. 213, fn. 5 [noting the manufacturer conceded at oral argument "that the warranty agreement reflects at least a modicum of procedural unconscionability"].)  First, the *Kim* court concluded the warranty's central purpose was not tainted with illegality because, "[o]n its face, the agreement's central purpose is establishing [the manufacturer]'s express warranty obligations." (*Id*. at p. 214.)  The court rejected the plaintiff's argument that the warranty's central purpose was "to strip California motorhome purchasers of their unwaivable Song-Beverly Act rights." (*Ibid*.)  The plaintiff argued his position was supported by the fact that the warranty was "less consumer-friendly than . . . the Song-Beverly Act" and that the manufacturer had "repeatedly been made aware that the choice of law provision is illegal in California and yet continu[ed] to include it in the warranty agreement." (*Ibid*.)  The court found the plaintiff's argument "problematic" because (1) the warranty applied nationwide, not just to consumers protected by the Song-Beverly Act; (2) the warranty did not "*universally* deprive consumers . . . of lemon law rights" because the plaintiff failed to show that other states' lemon laws are more favorable to consumers than the alternative forum at issue in *Kim*; and (3) the plaintiff erroneously concluded that "the *only* plausible explanation" for including the choice of law provision was to further an illegal scheme, because the manufacturer identified the "efficiency and predictability" afforded by providing a uniform warranty for motorhomes it manufactures in one state but sells nationwide. (*Kim*, at pp. 214–215.)  Based on these considerations, the *Kim* court

concluded the trial court did not abuse its discretion "in declining to infer . . . an illegal scheme." (*Id*. at p. 215.)

Addressing the second severance factor, the *Kim* court concluded the warranty's " 'unconscionability [and/or illegality] *can* be cured purely through severance' " because "[r]emoving the choice of law provision would not require any further revisions, additions, or deletions in other portions of the agreement." (*Kim*, *supra*, 113 Cal.App.5th at p. 215, italics added.) Applying the abuse of discretion standard, the court then concluded that severing the choice of law provision to enable enforcement of the forum selection clause was "in the interest of justice because the forum selection clause itself is clear and understandable" and, thus, "[i]t would be unfair to allow [the plaintiff] to avoid that obligation solely because the Legislature has declared *illegal* a different obligation, which the court has struck." (*Ibid*., original italics omitted & italics added.)

The *Kim* court concluded its severance analysis by rejecting the plaintiff's contention that severing the choice of law provision would disincentivize the manufacturer to stop including the choice of law provision in its warranty despite "long know[ing]" it "violates the Song-Beverly Act's waiver prohibition." (*Kim*, *supra*, 113 Cal.App.5th at p. 216.) The *Kim* court found that the "fundamental problem" with this "argument is that it presumes [the manufacturer] is acting in bad faith, a premise [the *Kim* court] reject[ed] as unsupported by the record." (*Id*. at p. 217.) The court also found that, "[i]n the context of a discretionary purchase of a motorhome," the plaintiff was not presented with the type of "harrowing" employment-related choices at issue in *Armendariz* and *Ramirez*. (*Kim*, at p. 217.) And in any event, the court stated that even if the deterrence factor weighed against severance, "the interests of justice would still, on balance, lead [the court] to

25

conclude that the [trial] court did not abuse its discretion in severing the choice of law provision." (*Ibid.*)

The *Kim* court next explained why it declined to follow *Lathrop* and *Hardy*. (*Kim, supra*, 113 Cal.App.5th at pp. 217–220.) First, based on its own analysis of "the *Armendariz/Ramirez* deterrence factor," the *Kim* court disagreed with the *Lathrop* and *Hardy* courts' "application and broad reliance" on that factor. (*Kim*, at p. 220.) Second, whereas the manufacturers in *Lathrop* and *Hardy* relied entirely on their proposed stipulations "as the sole basis for severing the choice of law clause at issue," the trial court in *Kim* severed the choice of law provision based on the Song-Beverly Act's antiwaiver provision. (*Ibid.*) Thus, the *Kim* court found the *Lathrop* and *Hardy* courts' focus on the propriety of allowing the defendant to unilaterally rewrite the parties' contract inapplicable to the *Kim* trial court's "severance based on statute, not stipulation." (*Ibid.*)

Although the *Kim* court affirmed the trial court's severance of the choice of law provision, the court reversed the trial court's reliance on the stipulation as the basis for concluding the plaintiff's rights under the Song-Beverly Act would not be diminished in the alternative forum. (*Kim, supra*, 113 Cal.App.5th at pp. 220–221.) "[B]eyond the specific wording" problems observed by the *Lathrop* court, the *Kim* court expressed concern that "[o]ther wording may likewise prove problematic . . . because of the unpredictability in how the parties will interpret and react to it" as the litigation unfolds. (*Id.* at p. 221.) "For these reasons," the *Kim* court "disagree[d] that [the manufacturer]'s proposed stipulation was sufficient — even after severance of the choice of law provision — to establish [the plaintiff]'s unwaivable rights would be protected." (*Ibid.*)

26

Nevertheless, "[g]iven the state of the law at the time [the manufacturer] sought to enforce the forum selection clause" (*Kim*, *supra*, 113 Cal.App.5th at p. 223) — including the *Verdugo* court's suggestion in dicta that a stipulation to apply California law would suffice (*id.* at p. 222) — the *Kim* court "conclude[d] it would be in the interests of justice" to give the manufacturer the opportunity to demonstrate based on the forum selection clause and traditional conflict of law principles — and not based on the stipulation or properly severed choice of law provision — that litigating in the alternative forum would not diminish the plaintiff's unwaivable statutory rights. (*Id.* at p. 223.)

**C. Analysis**

On the record before us, we conclude the trial court erred in granting Thor's motion to stay.

To begin, it appears the trial court imposed the burden on the wrong party. As noted, because Plaintiffs' unwaivable rights under the Song-Beverly Act are at issue, the burden that would ordinarily lie with Plaintiffs to show the unreasonableness of enforcing the forum selection clause shifted to Thor to show that enforcing the forum selection clause would not diminish Plaintiffs' unwaivable rights. (See *America Online*, *supra*, 90 Cal.App.4th at pp. 4, 13–14; *Verdugo*, *supra*, 237 Cal.App.4th at p. 158.) The trial court cited this general rule and burden-shifting exception but then spent the remainder of its ruling explaining why it *disagreed* with *Plaintiffs'* contentions — not why it *agreed* with *Thor's* contentions. Indeed, each relevant paragraph of the trial court's ruling begins by addressing what "*Plaintiffs* contend," what "*they* contend," or what "*they* argue." (Italics added.) It thus appears the trial court erred by imposing the burden on the wrong party. (See *Lathrop*, *supra*, 105 Cal.App.5th at p. 818, review granted.)

27

To the extent the court *did* consider whether enforcing the forum selection clause would diminish Plaintiffs' unwaivable statutory rights, the court relied exclusively on Thor's offer to stipulate to apply the Song-Beverly Act in Indiana litigation. We conclude this reliance was misplaced for several reasons. First, we agree with the *Lathrop* and *Kim* courts' conclusions that the wording of Thor's proposed stipulation and, more generally, the nature of a stipulation proposed during litigation, provided insufficient assurance that Plaintiffs' unwaivable statutory rights would be preserved if the case were litigated in Indiana. Although the stipulation Thor proposed here does not include the problematic "substantive rights" qualifier included in the *Lathrop* and *Kim* stipulations, the proposed stipulation here *does* include the qualifier that the stipulation applies only to Plaintiffs' "claims as pled in their complaint" and the nuance that Thor would merely "not oppose" — rather than *join* — a motion by Plaintiffs to apply the Song-Beverly Act in an Indiana court. We agree with the *Lathrop* and *Kim* courts that these caveats provide insufficient assurance that an Indiana state court would indeed apply the Song-Beverly Act in litigation between Plaintiffs and Thor. (See *Kim*, *supra*, 113 Cal.App.5th at pp. 220–221; *Lathrop*, *supra*, 105 Cal.App.5th at p. 826, review granted ["ultimately it will be up to the courts in Indiana to decide whether to honor all or part of the proposed stipulation"].)[10]

We also agree with the *Kim* court's broader concern that the proposed stipulation is problematic "beyond [its] specific wording." (*Kim*, *supra*, 113 Cal.App.5th at p. 221.) That is, while the parties might agree on the

---

[10] To be clear, we are not questioning whether an Indiana court could competently interpret and apply the Song-Beverly Act were the court to agree to apply it. (See, e.g., *Kim*, *supra*, 113 Cal.App.5th at p. 223 ["speculation that an Ohio court will be unable to correctly apply California law . . . is not a basis for declining to enforce the forum selection clause"].)

scope and meaning of the stipulation now (they do not), "real world circumstances" may create "unpredictability in how [they] will interpret and react to" the stipulation as the litigation unfolds. (*Ibid*.)

Thor relies on the dicta from *Verdugo* suggesting that the defendant "could have eliminated any doubt about which law would apply to [the plaintiff]'s claims by stipulating to have the [alternative forum's] court[] apply California law." (*Verdugo, supra*, 237 Cal.App.4th at p. 145.)[11] We find the *Lathrop* and *Kim* courts' *holdings* more persuasive than the *Verdugo* court's *dicta*. (See *Kim, supra*, 113 Cal.App.5th at pp. 221–222 [characterizing *Verdugo*'s stipulation suggestion as dicta]; *Lathrop, supra*, 105 Cal.App.5th at p. 824, review granted [observing that the *Verdugo* "court did not have occasion to decide" the stipulation question].)

While we agree with *Lathrop* and *Kim* that the uncertainties posed by the wording and nature of Thor's proposed stipulation render it insufficient to meet Thor's burden as the moving party, we are unable on the record before us to side with either line of cases on the unconscionability of severing the limited warranty's choice of law provision. Preliminarily, we note the trial court's ruling fails to mention the choice of law provision at all, let alone address any severance principles the court invoked in determining that Thor's proposed stipulation prevailed over the limited warranty's contractual provisions. We are thus left wondering whether the trial court applied the

---

11    Thor argues in its respondent's brief that "[a] long line of California authority" supports *Verdugo*'s stipulation approach. The authorities Thor cites, however, were merely discussing *Verdugo* and did not hold that a stipulation sufficiently protects a plaintiff's unwaivable California statutory rights. (See *Rheinhart, supra*, 92 Cal.App.5th at p. 1033; *Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 736.)

unconscionability theory at issue in *Lathrop* and *Hardy*, the statutory severance theory at issue in *Kim*, or still some other theory.

Moreover, to the extent the trial court discussed unconscionability in the context of the limited warranty's *forum selection* clause — as opposed to the *choice of law* clause, which the *Lathrop*, *Hardy*, and *Kim* courts addressed — the court did so exclusively by citing "the existence of Thor's stipulation" as defeating substantive unconscionability. And having found no substantive unconscionability, the court did not reach Plaintiff's claim of procedural unconscionability. (See *Ramirez*, *supra*, 16 Cal.5th at p. 493 ["Both procedural and substantive elements must be present to conclude a term is unconscionable."].) We see at least three problems with this approach.

First, the trial court's approach here violates the Supreme Court's admonition that unconscionability " 'is determined with reference to the time when the contract was made.' " (*Ramirez*, *supra*, 16 Cal.5th at p. 503.) The trial court's exclusive reliance on Thor's stipulation proposal in 2023 to resolve the alleged unconscionability of the limited warranty that Thor provided in 2021 shows the court did not undertake the required analysis.

Second, the parties' appellate briefing suggests the record was insufficient for the trial court to make an informed exercise of discretion on the unconscionability question. The parties frame the issue as hinging on whether, on the one hand, Thor's inclusion of choice of law and forum selection clauses designating Indiana as the forum and governing law are part of an unconscionable and illegal scheme to deprive California consumers of their unwaivable rights under the Song-Beverly Act (as Plaintiffs contend); or, on the other hand, whether it is merely the sound business practice of a manufacturer that produces motorhomes in one state and sells

30

them nationwide to dealers "without knowing where or to whom its motorhomes will eventually be sold" (as Thor contends). To support their view, Plaintiffs cite in their appellate briefing websites that purport to show the proportion of motorhomes sold in California as compared to other states. The implication of this evidence is that extensive California sales shows that Thor uses its choice of law and forum selection clauses to deliberately evade the Song-Beverly Act. For its part, Thor requests that we take judicial notice of industry materials explaining that motorhome manufacturers sell their products to dealers rather than directly to consumers.[12] The implication of this evidence is that because Thor does not know which states its motorhomes end up in, Thor simply offers a single warranty to all downstream purchasers nationwide without regard to the Song-Beverly Act. Although the parties' theoretical evidence strikes us as relevant to the unconscionability analysis, the parties presented no evidence on these points to the trial court.[13] Consequently, the trial court did not have the opportunity to resolve any factual disputes on these points or otherwise exercise informed discretion in resolving the unconscionability question. The

[12] We grant Thor's request to take judicial notice of the December 18, 2024 amicus letter, filed by the Recreation Vehicle Dealers Association in support of the petition for review in *Lathrop*, *supra*, 105 Cal.App.5th 808, review granted. However, because Plaintiffs confirmed in their reply brief that they do not contend the Song-Beverly Act provides an unwaivable right to a California forum, we deny as unnecessary and irrelevant Thor's request to take judicial notice of the legislative histories of (1) the National Consumer Act; (2) Senate Bill No. 940 (2022–2023 Reg. Sess.); and (3) Assembly Bill No. 1740 (2005–2006 Reg. Sess.). (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 573, fn. 4 ["only relevant evidence is subject to judicial notice"].)

[13] The only evidence offered on these points in the trial court was the Thor witness's declaration stating that Thor has included a forum selection clause in its warranty documents since 2013.

parties' belated efforts to bolster the record on appeal demonstrate the existence of unresolved factual disputes that we decline to address in the first instance. (See *People v. Asghedom* (2015) 243 Cal.App.4th 718, 728 ["As an appellate court, it is not our role to resolve factual issues and exercise discretion in the first instance."]; *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 504 [remanding for the trial court to address unresolved unconscionability issues in the first instance].)[14]

Finally, the trial court's reliance on the stipulation to negate substantive unconscionability overlooks Plaintiffs' allegation — and the *Lathrop* and *Hardy* courts' conclusions — that Thor's practice of routinely offering to stipulate around alleged violations of the Song-Beverly Act when challenged by savvy plaintiffs is, itself, part of Thor's allegedly illegal scheme because it condones an unlawful practice. (See *Lathrop*, *supra*, 105 Cal.App.5th at p. 821, review granted; *Hardy*, *supra*, 108 Cal.App.5th at p. 460, review granted; see also *Ramirez*, *supra*, 16 Cal.5th at p. 516 [explaining that the deterrence aspect of the unconscionability "inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme"].) The trial court did not grapple with this issue.

For these reasons, we conclude the trial court erred in granting Thor's motion to stay. But like the *Kim* court, based on the significant developments in the case law since Thor filed its motion and since the trial court ruled on it, we find it is in the interests of justice to provide Thor another opportunity to meet its burden to show that enforcing the forum

---

14    It is unclear from the opinions in *Lathrop*, *Hardy*, and *Kim* what evidence in the record enabled those courts to make the determinations they made about the potential unconscionability of each respective manufacturer's course of conduct.

selection clause will not diminish Plaintiffs' unwaivable rights under the Song-Beverly Act. (See *Kim*, *supra*, 113 Cal.App.5th at pp. 223–224.) Specifically, when Thor filed its motion, dicta in *Verdugo* (repeated in other cases) implied that a unilateral stipulation to apply California law in the alternative jurisdiction was sufficient to meet the moving party's burden. And no California court had grappled with choice of law and forum selection clauses in the specific context of motorhome warranties that include provisions (or designate the application of another forum's laws) that conflict with unwaivable rights under the Song-Beverly Act. Because *Lathrop*, *Hardy*, and *Kim* have so dramatically altered the legal landscape on these issues, we direct the trial court on remand to allow Thor the opportunity to meet its burden to show, without the proposed unilateral stipulation, that litigating Plaintiffs' case in Indiana will not diminish their unwaivable rights under the Song-Beverly Act.

## IV. DISPOSITION

The trial court's order granting Thor's motion to stay is reversed. Following remand, the trial court shall conduct further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.